ACCEPTED
04-15-00307-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
6/23/2015 4:35:06 PM
KEITH HOTTLE
CLERK

NO. 04-15-00307-CV

IN THE COURT OF APPEALS
FOURTH COURT OF APPEALS DISTRICT
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
06/23/2015 4:35:06 PM
KEITH E. HOTTLE
Clerk

* * *

AUTOZONE, INC., AND AUTOZONERS, L.L.C.,
*Appellants*

V.

MARIO FLORES,
*Appellee*

* * *

## BRIEF OF APPELLANTS

* * *

BRETT REYNOLDS & ASSOCIATES, P.C.
Brett T. Reynolds
State Bar No. 16795500
btreynolds@btrlaw.com
P. Brook Swilley
State Bar No. 24041997
pbswilley@btrlaw.com
1250 N.E. Loop 410, Suite 420
San Antonio, Texas 78209
(210) 805-9799
(210) 805-9654 (telecopier)

THE LAW OFFICE OF
JACQUELINE M. STROH, P.C.
Jacqueline M. Stroh
State Bar No. 00791747
jackie@strohappellate.com
10101 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 477-7416
(210) 477-7466 (telecopier)

ATTORNEYS FOR APPELLANTS

**APPELLANTS RESPECTFULLY REQUEST ORAL ARGUMENT**

## IDENTITY OF PARTIES AND COUNSEL

In accordance with Texas Rule of Appellate Procedure 38.1(a), Appellants present the following list of all parties to the order being appealed and their counsel:

1. **Appellants/Defendants Below**

    AutoZone, Inc.
    AutoZoners, L.L.C.

2. **Counsel for Appellants**

    Brett T. Reynolds                                           **Trial/Appellate Counsel**
    P. Brook Swilley
    1250 N.E. Loop 410, Suite 420
    San Antonio, Texas 78209

    Jacqueline M. Stroh                                         **Appellate Counsel**
    The Law Office of Jacqueline M. Stroh, P.C.
    10101 Reunion Place, Suite 600
    San Antonio, Texas 78216

3. **Appellee/Plaintiff Below**

    Mario Flores

4. **Counsel for Appellee**

    Jaime M. Lynn                                               **Trial/Appellate Counsel**
    Kiara Martinez
    The Carlson Law Firm, P.C.
    11606 North Interstate Highway 35
    Austin, Texas 78753
    *-and-*
    400 West Jasper Road
    Killeen, Texas 76542

**TABLE OF CONTENTS**

**Page**

IDENTITY OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF CONTENTS ............................................................................... iii

INDEX OF AUTHORITIES ........................................................................... vii

STATEMENT OF THE CASE ......................................................................... xv

STATEMENT REGARDING JURISDICTION ................................................... xvi

STATEMENT REGARDING ORAL ARGUMENT ........................................... xvii

ISSUE PRESENTED .................................................................................. xviii

**Issue No. 1:**

Whether the AutoZone Appellants are entitled to have the arbitration provisions contained in the parties' agreement enforced pursuant to the Federal Arbitration Act, resulting in a referral of this matter to arbitration.

The arbitration agreement expressly invokes application of the Federal Arbitration Act, as well as AutoZone's involvement in interstate commerce. That agreement is broad in scope – applying to claims for personal injury – and reserves to the arbitrator all questions regarding the interpretation, enforcement, and scope of the agreement. Regardless, Appellee Flores' claims fall well within the agreement's scope; and Flores' only defenses – based on section 1's exemption, the Texas Labor Code, and procedural unconscionability – have been rejected by Texas and federal courts alike ................................................ xviii

STATEMENT OF FACTS ................................................................................1

SUMMARY OF THE ARGUMENT .................................................................3

ARGUMENT AND AUTHORITIES ................................................................6

I.    This Court Reviews the Trial Court's Ruling *De Novo* .........................6

II.    The AutoZone Appellants Established the Existence of a Valid Arbitration Agreement Enforceable under the Federal Arbitration Act ..........................................................................8

    A.    The Parties Entered into a Binding Arbitration Agreement to which the Federal Arbitration Act Applies..........9

        1.    The Plan Expressly Invokes the FAA ............................10

        2.    The Plan Involves Interstate Commerce.........................11

    B.    The Arbitration Agreement Encompasses Mario Flores' Claims; Regardless, the Issue Is One for the Arbitrator to Decide ........................................................................14

        1.    The Arbitration Agreement Reserves for the Arbitrator's Decision the Issue of Whether Flores' Claims Fall within Its Scope............................................14

        2.    Even if the Scope of the Arbitration Agreement Is an Issue for Judicial Determination, Flores' Personal Injury Claims Fall Well within the Agreement's Terms ........................................................16

III.    None of Appellee Flores' Efforts to Thwart the Arbitration Agreement Have Merit........................................................17

    A.    Courts Recognize That the Federal Arbitration Act's Exception for "Employment" Agreements Applies *Solely* to Transportation Workers, Unlike Appellee Flores..................18

        1.    Flores Cannot Argue an Exception to the FAA When He Expressly Agreed to the FAA's Application ....................................................................18

        2.    Any Question Regarding Interpretation or Enforcement of the Agreement Must Be Decided by the Arbitrator ........................................................19

3. Regardless, the Supreme Court Has Limited the Exception to Transportation Workers Actually Engaged in the Interstate Transport of Goods ................ 19

B. The Texas Workers' Compensation Act Does Not Preclude Enforcement of the Plan's Arbitration Provisions, Nor Could It in Light of the Federal Arbitration Act's Supremacy ..................................... 21

    1. The Supreme Court of Texas Has Rejected This Exact Argument, and Flores Conceded as Much Below ........................................................................ 22

    2. To the Extent Section 406.003(e) Would Preclude Arbitration, the FAA Would Preempt It ......................... 23

C. Appellee Flores Failed to Demonstrate Procedural Unconscionability ................................................................. 24

    1. Appellee Flores Attacked the Parties' Agreement as a Whole – an Argument That the Supreme Court of the United States Has Held Must Be Resolved by the Arbitrator ............................................. 24

    2. Even Assuming a Court Could Decide the Issue, This Court Has Held That Illiteracy Is No Defense to Arbitration ................................................................. 28

        a. Flores' "Proof" Constitutes Barred Parol Evidence and, Thus, Cannot Be Considered by the Court ......................................................... 28

        b. Texas Law Does Not Recognize an Inability to Read English as a Defense to Contract – Even with an Unconscionability Label – and Flores Offered No Supportive Evidence in Any Event ........................................................... 29

      i.      Flores Offered No Proof of an Inability to Speak, Read, or Write English .......................................29

      ii.     Texas Does Not Recognize Illiteracy as a Defense to Contract Generally or as a Defense to Arbitration Specifically...............................................31

      iii.    This Court Has Rejected Flores' Authority, and Flores Offered No Evidence of Fraud on AutoZone's Part Regardless...........................................35

PRAYER .................................................................................38

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION ...................................................39

CERTIFICATE OF SERVICE .................................................40

APPENDIX ..................................................... (A-1 to A-3)

Order Denying "Defendants' Motion to Compel/Enforce Arbitration" (04/27/15) ......................... A-1

Federal Arbitration Act.......................................................... A-2

Excerpts from the AutoZone Texas Occupational Injury Benefit Plan.......................................... A-3

# INDEX OF AUTHORITIES

**Page**

**CASES**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
    513 U.S. 265 (1995)................................................................................11

*Associated Employers Lloyds v. Howard*,
    156 Tex. 277, 294 S.W.2d 706 (1956) ...............................................31

*Brand FX, LLC v. Rhine*,
    458 S.W.3d 195 (Tex. App. – Fort Worth 2015, no pet.).......................7

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)................................................................................25

*BWI Cos., Inc. v. Beck*,
    910 S.W.2d 620 (Tex. App. – Austin 1995, orig. proceeding) ..................... 12, 20

*Cantella & Co. v. Goodwin*,
    924 S.W.2d 943 (Tex. 1996) (orig. proceeding) ........................................ 8, 9, 16

*Cintas Corp. v. Quevedo*,
    No. 04-11-00142-CV, 2012 WL 1940642
    (Tex. App. – San Antonio, May 30, 2012, no pet.) (mem. op.) ..........................29

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001).......................................................... 9, 19, 20

*City of San Antonio v. International Ass'n of Fire Fighters, Local 624*,
    Nos. 04-12-00783-CV and 04-13-00109-CV, 2013 WL 5508408 (Tex.
    App. – San Antonio, Oct. 2, 2013, no pet., orig. proceeding) (mem. op.) .......7, 13

*De Villagomez v. First Nat'l Bank*,
    No. 13-04-00367-CV, 2005 WL 1832800
    (Tex. App. – Corpus Christi, Aug. 4, 2005, pet. denied) (mem. op.)...................32

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002)................................................................................19

*Elkins v. Stotts-Brown*,
    103 S.W.3d 664 (Tex. App. – Dallas 2003, no pet.) .............................................31

*Ernst & Young LLP v. Martin*,
278 S.W.3d 497 (Tex. App. – Houston [14th Dist.] 2009,
no pet., orig. proceeding) ................................................................15

*Estate of Benitez v. Sears, Roebuck & Co.*,
No. 3:13-CV-0468-D, 2013 WL 4223875 (N.D. Tex., Aug. 14, 2013).. 27, 37, 38

*EZ Pawn Corp. v. Mancias*,
934 S.W.2d 87 (Tex. 1996) (orig. proceeding) (per curiam) ...............................24

*Fleetwood Enters., Inc. v. Gaskamp*,
280 F.3d 1069 (5th Cir. 2002) ................................................................28

*Forest Oil Corp. v. McAllen*,
268 S.W.3d 51 (Tex. 2008)..................................................................15

*Glassman v. Goodfriend*,
347 S.W.3d 772 (Tex. App. – Houston [14th Dist. 2011, pet. denied)
(en banc)..........................................................................37

*Grapevine Excavation, Inc. v. Maryland Lloyds*,
35 S.W.3d 1 (Tex. 2000)..................................................................37

*Green v. SuperShuttle Int'l, Inc.*,
653 F.3d 766 (8th Cir. 2011) ................................................................19

*Henry v. Gonzalez*,
18 S.W.3d 684 (Tex. App. – San Antonio 2000,
pet. dism'd, orig. proceeding)................................................................26

*IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*,
387 S.W.3d 799 (Tex. App. – El Paso 2012, no pet.) ...........................................15

*In re AdvancePCS Health, L.P.*,
172 S.W.3d 603 (Tex. 2005) (orig. proceeding) ................................. 10, 21

*In re Alamo Lumber Co.*,
23 S.W.3d 577 (Tex. App. – San Antonio 2000, orig. proceeding)......................10

*In re Big 8 Food Stores, Ltd.*,
166 S.W.3d 869 (Tex. App. – El Paso 2005, orig. proceeding).............. 12, 13, 32

*In re Border Steel, Inc.*,
   229 S.W.3d 825 (Tex. App. – El Paso 2007, orig. proceeding) .............. 23, 24, 34

*In re Dallas Peterbilt, Ltd., L.L.P.*,
   196 S.W.3d 161 (Tex. 2006) (orig. proceeding) .................................................21

*In re Dillard Dep't Stores*,
   198 S.W.3d 778 (Tex. 2006) (orig. proceeding) .................................................21

*In re FirstMerit Bank, N.A.*,
   52 S.W.3d 749 (Tex. 2001) (orig. proceeding) ........................................ 7, 17, 26

*In re Gardner Zemke Co.*,
   978 S.W.2d 624 (Tex. App. – El Paso 1998, orig. proceeding) .........................13

*In re Golden Peanut Co., LLC*,
   298 S.W.3d 629 (Tex. 2009) (orig. proceeding) (per curiam) ...................... 22, 24

*In re H.E. Butt Grocery Co.*,
   17 S.W.3d 360 (Tex. App. – Houston [14th Dist.] 2000, orig. proceeding). 17, 29

*In re Halliburton Co.*,
   80 S.W.3d 566 (Tex. 2002) (orig. proceeding) ................................... 8, 21, 24, 29

*In re HEB Grocery Co., L.P.*,
   299 S.W.3d 393 (Tex. App. – Corpus Christi 2009, orig. proceeding)......... 10, 16

*In re Jim Walter Homes, Inc.*,
   207 S.W.3d 888 (Tex. App. – Houston 14th Dist.] 2006, orig. proceeding) .......11

*In re Kellogg Brown & Root*,
   80 S.W.3d 611 (Tex. App. – Houston [1st Dist.] 2002, orig. proceeding) ... 10, 11

*In re L & L Kempwood Assocs., L.P.*,
   9 S.W.3d 125 (Tex. 1999) (orig. proceeding) (per curiam) ............................8, 12

*In re Labatt Food Serv., L.P.*,
   279 S.W.3d 640 (Tex. 2009) (orig. proceeding) ..................................................7

*In re Ledet*,
   No. 04-04-00411-CV, 2004 WL 2945699 (Tex. App. –
   San Antonio, Dec. 22, 2004, orig. proceeding) (mem. op.) ........ 33, 34, 36, 37, 38

*In re Lyon Fin. Servs.*,
  257 S.W.3d 228 (Tex. 2008) (orig. proceeding) ...............................................24

*In re Macy's Tex., Inc.*,
  291 S.W.3d 418 (Tex. 2009) (orig. proceeding) (per curiam) .............................21

*In re McKinney*,
  167 S.W.3d 833 (Tex. 2005) (orig. proceeding) ...............................................21

*In re Merrill Lynch Trust Co. FSB*,
  123 S.W.3d 549 (Tex. App. – San Antonio 2003, orig. proceeding) ...................12

*In re MP Ventures of So. Tex., Ltd.*,
  276 S.W.3d 524 (Tex. App. – San Antonio 2008, orig. proceeding) ...................23

*In re Nexion Health at Humble, Inc.*,
  173 S.W.3d 67 (Tex. 2005) (orig. proceeding) .................................................13

*In re Oakwood Mobile Homes, Inc.*,
  987 S.W.2d 571 (Tex. 1999) (orig. proceeding),
  *abrogated in part on other grounds in In re Halliburton Co.*,
  80 S.W.3d 566 (Tex. 2002) (orig. proceeding) ...................................................8

*In re Odyssey Healthcare, Inc.*,
  310 S.W.3d 419 (Tex. 2010) (orig. proceeding) ...............................................22

*In re Olshan Foundation Repair Co., LLC*,
  328 S.W.3d 883 (Tex. 2010) (orig. proceeding) ........................................ 24, 26

*In re People's Choice Home Loan, Inc.*,
  225 S.W.3d 35 (Tex. App. – El Paso 2005, orig. proceeding) ...........................10

*In re Poly-Am., L.P.*,
  262 S.W.3d 337 (Tex. 2008) (orig. proceeding) .................................................7

*In re Rangel*,
  45 S.W.3d 783 (Tex. App. – Waco 2001, orig. proceeding)...............................34

*In re ReadyOne Indus.*,
  294 S.W.3d 764 (Tex. App. – El Paso 2009, orig. proceeding) .........................10

*In re Rubiola*,
  334 S.W.3d 220 (Tex. 2011) (orig. proceeding) .............................................8, 16

*In re Swift Transp. Co.*,
  311 S.W.3d 484 (Tex. App. – El Paso 2009, orig. proceeding) ..................... 20, 21

*In re Turner Bros. Trucking Co.*,
  8 S.W.3d 370 (Tex. App. – Texarkana 1999, orig. proceeding) ............. 23, 35, 36

*Indemnity Ins. Co. of N. Am. v. W.L. Macatee & Sons*,
  129 Tex. 166, 101 S.W.2d 553 (1937) ................................................................31

*J.M. Davidson v. Webster*,
  128 S.W.3d 223 (Tex. 2003) ...............................................................................17

*Jack B. Anglin Co., Inc. v. Tipps*,
  842 S.W.2d 266 (Tex. 1992) (orig. proceeding) ...............................................9, 23

*Kuper v. Schmidt*,
  161 Tex. 189, 338 S.W.2d 948 (1960) .................................................................29

*Lopez v. Garbage Man, Inc.*,
  No. 12-08-00384-CV, 2011 WL 1259523
  (Tex. App. – Tyler, Mar. 31, 2011, no pet.) (mem. op.)......................................32

*Lost Creek Mun. Utility Dist. v. Travis Indus. Painters, Inc.*,
  827 S.W.2d 103 (Tex. App. – Austin 1992, writ denied).....................................12

*Madeksho v. Abraham, Watkins, Nichols & Friend*,
  57 S.W.3d 448 (Tex. App. – Houston [14th Dist.] 2001, pet. denied).................31

*Manahan v. Meyer*,
  862 S.W.2d 130 (Tex. App. – Houston [1st Dist.] 1993, writ denied).................14

*Medina v. Tate*,
  438 S.W.3d 583 (Tex. App. – Houston [1st Dist.] 2013, no pet.).........................37

*MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.*,
  260 S.W.3d 561 (Tex. App. – Dallas 2008, no pet.) ...........................................37

*Nguyen Ngoc Giao v. Smith & Lamm, P.C.*,
  714 S.W.2d 144 (Tex. App. – Houston [1st Dist.] 1986, no writ) ........................33

*Penrol Drilling Corp. v. Williams*,
  868 S.W.2d 294 (Tex. 1993) ................................................................................36

*Perry Homes v. Cull,*
258 S.W.3d 580 (Tex. 2008) ..................................................................26

*Petroleum Analyzer Co. LP v. Franek Olstowki,*
No. 01-09-00076-CV, 2010 WL 2789016
(Tex. App. – Houston [1st Dist.], Jul. 15, 2010, no pet.) (mem. op.) ..................13

*Prevot v. Phillips Petroleum Co.,*
133 F.Supp.2d 937 (S.D. Tex. 2001)......................................................35

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
388 U.S. 395 (1966)................................................................... 25, 26

*Prudential Securities, Inc. v. Marshall,*
909 S.W.2d 896 (Tex. 1995) (orig. proceeding) ....................................16

*ReadyOne Indus., Inc. v. Flores,*
___ S.W.3d ___, 2014 WL 6982275
(Tex. App. – El Paso, Dec. 10, 2014, pet. filed)......................................34

*Rent-A-Center, West, Inc. v. Jackson,*
561 U.S. 63 (2010)................................................................ 15, 25, 26

*Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.,*
442 S.W.3d 706 (Tex. App. – Dallas 2014, pet. denied)...................................15

*Shearson/American Express, Inc. v. McMahon,*
482 U.S. 220 (1987).................................................................................9

*Southland Corp. v. Keating,*
465 U.S. 1 (1984)..................................................................................23

*State v. Shumake,*
199 S.W.3d 279 (Tex. 2006) ...............................................................7

*Tamez v. Southwestern Motor Transport, Inc.,*
155 S.W.3d 564 (Tex. App. – San Antonio 2004, no pet.) .......................... 32, 38

*TMI, Inc. v. Brooks,*
225 S.W.3d 783 (Tex. App. – Houston [14th Dist.] 2007,
pet. denied, orig. proceeding) ...............................................................30

*United States v. Lauersen*,
   No. 98 CR. 1134(WHP), 1999 WL 637237
   (S.D.N.Y., Aug. 20, 1999) (not designated for publication) .................................14

*Valdez v. Autozone, Inc.*,
   No. H-14-3386, 2015 WL 1099700
   (S.D. Tex., Feb. 17, 2015) (not designated for publication) ..............................15

*Vera v. North Star Dodge Sales, Inc.*,
   989 S.W.2d 13 (Tex. App. – San Antonio 1998, no pet.) ........... 31, 33, 36, 37, 38

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior
   Univ.*,
   489 U.S. 468 (1989)..........................................................................................10

*White-Weld & Co., Inc. v. Mosser*,
   587 S.W.2d 485 (Tex.Civ.App. – Dallas 1979, writ ref'd n.r.e.) .........................20

CONSTITUTIONAL PROVISIONS

U.S. CONST. art. VI, cl.2 .......................................................................................23

STATUTES

FEDERAL ARBITRATION ACT, 9 U.S.C. § 1...................iii, xv, xvii, 17, 18, 19, 20, 21

FEDERAL ARBITRATION ACT, 9 U.S.C. § 2..................................................... 8, 11, 20

FEDERAL ARBITRATION ACT, 9 U.S.C. § 3...........................................................8

FEDERAL ARBITRATION ACT, 9 U.S.C. § 4...........................................................8

FEDERAL ARBITRATION ACT, 9 U.S.C. § 16.........................................................xv

FEDERAL ARBITRATION ACT, 9 U.S.C. § 16(a)(1) .................................................xv

TEX. CIV. PRAC. & REM. CODE § 51.016 (West 2014)................................... xv, 3, 7

TEX. LAB. CODE § 406.033(a) (West 2015) .........................................................22

TEX. LAB. CODE § 406.033(e) (West 2015) ................................. v, 2, 21, 22, 23, 24

**RULES**

TEX. R. APP. P. 9.4(i).................................................................................39

TEX. R. APP. P. 38.1(a)............................................................................ ii

**STATEMENT OF THE CASE**

*Nature of the Case:* Plaintiff Mario Flores filed suit against AutoZone, Inc. and AutoZoners, L.L.C., asserting a personal injury claim arising out of an alleged workplace injury. (*CR 9-16, 26*)

*Trial court*: The Honorable Ana Lisa Garza of the 229th Judicial District Court, Starr County, Texas. (*CR 294; RR*)

*Trial Court's Disposition:* The trial court signed an Order denying "Defendants' Motion to Compel/Enforce Arbitration" on April 27, 2015. (*CR 294*) The AutoZone Appellants[1] have pursued an interlocutory appeal from that order, which refused to enforce the arbitration provisions of the AutoZone Texas Occupational Injury Benefit Plan. (*CR 299-300, 307-09*)

*Parties in the Court of Appeals:* The Appellants, AutoZone, Inc. and AutoZoners, L.L.C., are the Defendants below. Appellee, Mario Flores, is the Plaintiff below.

*Requested Disposition from This Court:* The AutoZone Appellants request that the Court reverse the trial court's order denying their Motion to Compel Arbitration; that the Court render judgment enforcing the parties' agreement to arbitrate, compelling arbitration, and staying the trial court's proceedings pending arbitration; and that the Court award Appellants their costs on appeal.

---

[1] This brief refers to the Appellants collectively as "AutoZone" or the "AutoZone Appellants."

## STATEMENT REGARDING JURISDICTION

This interlocutory appeal is authorized by section 51.016 of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE § 51.016 (West 2014) ("In a matter subject to the Federal Arbitration Act (9 U.S.C. Section 1 et seq.), a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order of decision would be permitted by 9 U.S.C. Section 16"); *see also* FEDERAL ARBITRATION ACT, 9 U.S.C. § 16(a)(1) (noting that appeal may be taken from order denying stay and from order denying petition to order arbitration to proceed).

## STATEMENT REGARDING ORAL ARGUMENT

Though Appellants believe that this appeal can be resolved in their favor based on well-established federal and state precedent, oral argument would be helpful to permit the Court and counsel to discuss the specific terms of the parties' agreement, the applicability of the Federal Arbitration Act, the distinction between matters to be determined by an arbitrator and those to be determined by the trial court, and the lack of any viable defense to the arbitration agreement's enforcement.

# ISSUE PRESENTED

## Issue No. 1:

Whether the AutoZone Appellants are entitled to have the arbitration provisions contained in the parties' agreement enforced pursuant to the Federal Arbitration Act, resulting in a referral of this matter to arbitration.

The arbitration agreement expressly invokes application of the Federal Arbitration Act, as well as AutoZone's involvement in interstate commerce. That agreement is broad in scope – applying to claims for personal injury – and reserves to the arbitrator all questions regarding the interpretation, enforcement, and scope of the agreement. Regardless, Appellee Flores' claims fall well within the agreement's scope; and Flores' only defenses – based on section 1's exemption, the Texas Labor Code, and procedural unconscionability – have been rejected by Texas and federal courts alike.

## STATEMENT OF FACTS

On July 28, 2005, Appellee Mario Flores signed the AutoZone Texas Occupational Injury Benefit Plan. (*CR 77-139, 140*) On the first page of that plan, employees were provided notice, in both English and Spanish, that the document concerned the employee's rights and benefits under the plan. (*CR 101*) The notice further advised the employee that, if he had any difficulty understanding English, he should contact the risk manager at a designated address and telephone number during normal business hours. (*CR 101*) The plan itself contained several provisions addressing covered injuries, the benefits provided, and resolution procedures – including provisions mandating the application of the Federal Arbitration Act and the referral to arbitration of:

> any legal or equitable claim or dispute relating to enforcement or interpretation of the arbitration provisions in an AZTEX Advantage Acknowledgement Form or this arbitration requirement; and

> any legal or equitable claim by or with respect to you for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma (including, but not limited to, claims of negligence or gross negligence or discrimination; and claims for assault, battery, negligent hiring/training/supervision/retention, emotional distress, retaliatory discharge, or violation of any other noncriminal federal, state, or other governmental common law, statute, regulation or ordinance in connection with a job-related injury, regardless of whether the common law doctrine was recognized or whether the statute, regulation or ordinance was enacted before or after the effective date of this booklet.

1

(*CR 80-83*)   Flores not only signed the agreement's acknowledgement form in 2005, but he later acknowledged that he had read and understood the plan documents again in 2011 and 2012 – this time through a computer system that provided a Spanish translation of all relevant documents by merely making a Spanish-language selection. (*CR 174-75, 180, 182, 187-91*)

On March 27, 2013, Appellee Flores allegedly sustained an on-the-job injury while working as manager of an AutoZone store in Rio Grande City, Texas. (*CR 11*)   Specifically, Appellee Flores alleged that he fell from a ladder while attempting to ascend it with boxed merchandise. (*CR 11*)   Though Appellee Flores applied for and received benefits under the plan, he nevertheless filed suit against AutoZone, Inc. and AutoZoners, L.L.C. on January 14, 2015, alleging negligence and seeking monetary relief. (*CR 9-16, 26*)   The Defendants answered and, shortly thereafter, filed a Motion to Compel Arbitration, seeking enforcement of the arbitration provisions contained within the subject plan. (*CR 28-31, 72-143*)

Appellee Flores opposed the motion to compel, arguing:   (1) that the arbitration agreement's location within an "employment" agreement triggered an exception to the Federal Arbitration Act's application; (2) section 406.033(e) of the Texas Labor Code precludes enforcement of the agreement; and (3) the agreement is procedurally unconscionable because Flores could not read or write English when he was asked to acknowledge it. (*CR 145-60*)   The AutoZone Appellants

2

replied, and the trial court held a hearing on April 13, 2015. (*CR 144, 161-202; RR*) Thereafter, Flores attempted to submit additional evidence in support of his unconscionability defense, to which AutoZone objected. (*CR 203-87, 288-93*) On April 27, 2015, the trial court signed an Order denying "Defendants' Motion to Compel/Enforce Arbitration." (*CR 294*) The AutoZone Appellants then timely perfected an interlocutory appeal to this Court pursuant to section 51.016 of the Texas Civil Practice and Remedies Code. (*CR 299-300, 307-09*)

## SUMMARY OF THE ARGUMENT

Both Texas and federal courts have long acknowledged arbitration as a preferred alternative to litigation in a judicial forum, generally and in the specific context of occupational benefit plans. Those same courts have long enforced arbitration provisions under the Federal Arbitration Act when the contract expressly invokes the federal act and also when the contract involves interstate commerce. Not only does the arbitration agreement here expressly invoke the FAA in the plan's provisions, but it expressly invokes AutoZone's involvement with interstate commerce. Certainly, the invocation of the FAA is enough to trigger its application. But, should there be any doubt, AutoZone's own involvement in interstate commerce – through its interstate purchase and sale of goods as expressed in the agreement, its incorporation in a different state, and the administration of medical benefits by an entity located in that same foreign state –

3

sufficiently tethers the agreement to interstate commerce for application of the FAA. Thus, the Federal Arbitration Act and its strong presumption in favor of arbitration govern the agreement at issue in this appeal.

Entrenched legal principles require courts to construe arbitration provisions broadly and employ a presumption of arbitrability when analyzing whether a particular plaintiff's claims fall within the scope of an agreement to arbitrate. Though the arbitration provisions refer all issues concerning the scope of the agreement to the arbitrator himself for determination, Appellee Flores' personal injury claims fall squarely within the plan's scope, which extends to and encompasses all claims for personal injury of whatever kind. Despite the strong public policy in favor of arbitration and the mountain of precedent requiring enforcement here, Appellee Flores nevertheless attempted a series of meritless roadblocks in an effort to thwart the motion to compel. But those efforts are futile. Texas courts have rejected every one of Flores' defenses through binding precedent that requires this Court to do the same.

Flores first argued that the FAA does not apply to "contracts of employment" and that the occupational benefit plan was just such a contract. Not only is this a threshold question that the parties agreed to submit to the arbitrator for resolution, but the Supreme Court of the United States has explained (on more than one occasion) that the FAA expressly limits the phrase "contracts of

4

employment" to contracts involving employees who are actually engaged in the shipment of goods – like seaman, railroad workers, and truck drivers. Flores works in a retail store – just as the employee did in the seminal Supreme Court case holding that such employment does not come within the only exception to the FAA's application. Flores offered no evidence that he is actually engaged in the physical transport of goods across state lines because there is none.

Next, Flores argued that enforcing the arbitration agreement would violate the Texas Labor Code – even though the Supreme Court has addressed and rejected that exact argument. Though not clear, Flores appears to have conceded the point at the hearing on AutoZone's motion to compel. Regardless, it, too, presents a threshold question of arbitrability and ultimately has no merit. Finally, Flores argued that the arbitration agreement is procedurally unconscionable because Flores, a Spanish speaker, could not read the agreement as presented to him in English. However, because his argument attacks the contract as a whole and because the arbitration agreement refers all matters relating to its interpretation and enforcement to binding arbitration, the Supreme Court of the United States has held that this question, too, is one for the arbitrator's decision.

Even assuming a court could address the issue, Flores offered no evidence of any inability to understand English and again thumbs his nose at binding precedent regardless. This Court – based on precedent from the Supreme Court of Texas –

has rejected precisely this contention because illiteracy is no defense to contract. Specifically, the Fourth Court considered and rejected as a defense to arbitration a claimed inability to read English. In doing so, the Court refused to follow case law that Flores cited to the trial court in support of his claim. And even under the case law Flores cited below, he could not prevail. Those cases precluded arbitration based on affirmative conduct attempting to hide the arbitration agreement from the claimant, whereas here the evidence is precisely the opposite. That evidence includes a notice in Spanish – which Flores acknowledges he received – providing contact information to be used in the event anyone had difficulty understanding any part of the agreement. And, in the years after the initial acknowledgement, Flores acknowledged the agreement at least twice more on a computer system that translated all documents into Spanish at the click of a button. In short, Flores offered no viable defense to enforcement of the mandatory referral to arbitration; and the trial court erred in denying AutoZone's motion to compel. The Court should reverse and render a referral to arbitration.

## ARGUMENT AND AUTHORITIES

I. **This Court Reviews the Trial Court's Ruling *De Novo***

Review of a trial court's decision on whether to enforce an arbitration provision – though frequently couched in terms of abuse of discretion – is made *de novo* when the appeal concerns legal issues, such as the interpretation of the

arbitration provision itself, matters of statutory construction, and the viability of defenses to arbitration. *See, e.g., City of San Antonio v. International Ass'n of Fire Fighters, Local 624*, Nos. 04-12-00783-CV and 04-13-00109-CV, 2013 WL 5508408, *3 (Tex. App. – San Antonio, Oct. 2, 2013, no pet., orig. proceeding) (mem. op.) ("The existence and the applicability of the arbitration agreement is a question of law and, thus, we review the decision *de novo*."), *quoting In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753-54 (Tex. 2001) (orig. proceeding)[2] (if agreement includes claims and opposing party cannot prove any defense, "the trial court has no discretion but to compel arbitration and stay its own proceedings"); *see also State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (issues of statutory construction are questions of law that courts review *de novo*); *Brand FX, LLC v. Rhine*, 458 S.W.3d 195, 204 (Tex. App. – Fort Worth 2015, no pet.) ("Whether the party resisting arbitration has established a defense to arbitration – such as waiver or unconscionability – is a legal issue also subject to de novo review."), *citing In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding). Thus, the Court must review the trial court's denial of the AutoZone Appellants' motion to compel *de novo*.

---

[2] Many of the judicial decisions cited in this brief arise out of original proceedings because, until the enactment of section 51.016 of the Texas Civil Practice and Remedies Code in 2009, parties did not have an interlocutory appellate remedy to challenge a trial court's refusal to enforce arbitration provisions. *See* TEX. CIV. PRAC. & REM. CODE § 51.016 (West 2014); *cf. In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642-43 (Tex. 2009) (orig. proceeding) ("A party denied the right to arbitrate pursuant to an agreement subject to the FAA does not have an adequate remedy by appeal and is entitled to mandamus relief to correct a clear abuse of discretion").

**II.    The AutoZone Appellants Established the Existence of a Valid Arbitration Agreement Enforceable under the Federal Arbitration Act**

The Supreme Court of Texas has set forth the test that governs the determinations to be made in this interlocutory appeal:

> A party seeking to compel arbitration must establish the existence of an arbitration agreement, and show that the claims raised fall within the scope of that agreement. *See Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996). Once the party establishes a claim within the arbitration agreement, the trial court must compel arbitration and stay its own proceedings. *Id.*

*In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding);[3] *see also In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); FEDERAL ARBITRATION ACT, 9 U.S.C. §§ 3, 4 (mandating referral to arbitration and stay of trial court proceedings when suit based on issue referable to arbitration under a written arbitration agreement). The Federal Arbitration Act, also known as the FAA, generally governs arbitration provisions contained in contracts that expressly invoke its application, as well as those contained in contracts that involve interstate commerce. FEDERAL ARBITRATION ACT, 9 U.S.C. § 2; *see also In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding) (per curiam). Even though the FAA is a federal act, Texas courts have the authority to enforce its provisions; and the FAA applies to cases pending in both state and federal courts when the agreement invokes its application

---

[3] *Abrogated in part on other grounds by In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002) (orig. proceeding).

and also applies when the underlying transaction involves interstate commerce. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001); *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944-45 (Tex. 1996) (orig. proceeding); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 268 (Tex. 1992) (orig. proceeding).

By its motion and reply, the AutoZone Appellants fully met their burden.[4] They demonstrated an enforceable, written arbitration agreement; application of the Federal Arbitration Act; and that Appellee Flores' claims fall within the scope of the arbitration provision – assuming this is a question up for judicial determination. Appellee Flores failed to assert any issue that would defeat enforcement of the plan's arbitration provisions; and, thus, the trial court abused its discretion in denying the motion to compel.

### A. The Parties Entered into a Binding Arbitration Agreement to which the Federal Arbitration Act Applies

AutoZone's Texas Occupational Injury Benefit Plan contains provisions requiring Flores to pursue any complaint against AutoZone through the appropriate arbitration procedures – including those relating to enforcement or interpretation of the arbitration provisions and those relating to any claim for personal injury. (*CR 80*) The benefits plan is a contract to which the FAA, and its strong preference for and presumptions in favor of arbitration, apply. *See, e.g., Shearson/American*

---

[4] Of course, by filing its motion to compel and seeking to enforce the plan's arbitration provisions, the AutoZone Appellants do not waive any arguments they may have based on the Appellee Flores' failure to follow any aspect of the dispute resolution procedure.

*Express, Inc. v. McMahon*, 482 U.S. 220, 225 (1987) (noting that Federal Arbitration Act was specifically enacted to overcome "judicial hostility to arbitration agreements").

### 1. The Plan Expressly Invokes the FAA

The plan expressly provides for the application of the FAA. Specifically, the plan recites that "The Federal Arbitration Act will govern the interpretation, enforcement, and proceedings under this arbitration requirement." (*CR 82-83*) Texas courts have held that the FAA governs a written arbitration agreement if the parties have expressly contracted for the FAA's application. *See, e.g., In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 605-06 & n.3 (Tex. 2005) (orig. proceeding); *In re HEB Grocery Co., L.P.*, 299 S.W.3d 393, 396-97 (Tex. App. – Corpus Christi 2009, orig. proceeding); *In re People's Choice Home Loan, Inc.*, 225 S.W.3d 35, 40 (Tex. App. – El Paso 2005, orig. proceeding); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App. – Houston [1st Dist.] 2002, orig. proceeding); *In re Alamo Lumber Co.*, 23 S.W.3d 577, 579 (Tex. App. – San Antonio 2000, orig. proceeding); *see also Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478-79 (1989).

Indeed, Texas courts enforce the parties' choice of the FAA to govern their arbitration agreement regardless of the nexus to interstate commerce. *See In re ReadyOne Indus.*, 294 S.W.3d 764, 769 (Tex. App. – El Paso 2009, orig.

10

proceeding); *In re Kellogg Brown & Root*, 80 S.W.3d at 617; *see also In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 896 (Tex. App. – Houston 14th Dist.] 2006, orig. proceeding) ("Courts honor the parties' agreement to be bound by the FAA, upholding choice-of-law provisions providing for application of the FAA."). And Appellee Flores' response acknowledged the plan's express invocation of the FAA. (*CR 147*) ("Plaintiff's Benefit Plan states that the Federal Arbitration Act . . . will govern the interpretation, enforcement, and proceedings under the arbitration requirement."). While Flores argued that he fell within an exception to the FAA's application, he never disputed its general application otherwise and admitted precisely the opposite.

### 2. The Plan Involves Interstate Commerce

Moreover, the plan involves interstate commerce as that concept has been defined by courts so as to trigger the FAA's application. The FAA unquestionably applies if a contract *involves* commerce among the several states or "interstate commerce." FEDERAL ARBITRATION ACT, 9 U.S.C. § 2. The United States Supreme Court has held that the word "involving," as used in the FAA, is the functional equivalent of "affecting." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995). As long as the contract or transaction affects interstate commerce, the FAA applies; it is irrelevant even whether the parties contemplated interstate commerce. *Id.* at 278-81.

11

Texas courts likewise construe the term "commerce" broadly, holding that the amount of or effect on interstate commerce need not be substantial. *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding); *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 553 (Tex. App. – San Antonio 2003, orig. proceeding); *Lost Creek Mun. Utility Dist. v. Travis Indus. Painters, Inc.*, 827 S.W.2d 103, 105 (Tex. App. – Austin 1992, writ denied); *see also BWI Cos., Inc. v. Beck*, 910 S.W.2d 620, 621 (Tex. App. – Austin 1995, orig. proceeding). Instead, the contract need only involve or affect, *i.e.*, relate to, interstate commerce because that "standard implements the strong federal policy favoring arbitration." *Lost Creek*, 827 S.W.2d at 105.

The benefits plan at issue here involves interstate commerce in more than one way. First, the plan itself expressly references the involvement of interstate commerce by explaining that "AutoZone is engaged in transactions involving interstate commerce (for example, purchasing goods and services from outside Texas which are shipped to Texas and providing goods and services to customers from other states) and your employment involves such commerce." (*CR 82*) Appellee Flores never disputed the involvement of interstate commerce as set forth in the plan. *See In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 880 (Tex. App. – El Paso 2005, orig. proceeding) (noting company's plan recitation that it is involved in interstate commerce and lack of evidence to the contrary offered by

12

claimant); *In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App. – El Paso 1998, orig. proceeding) (noting that real parties in interest did not contest interstate commerce allegations). Flores' employment relationship with AutoZone and the benefit plan itself necessarily "involve" interstate commerce. *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d at 880 (relationship between employer who is regularly engaged in activities related to interstate commerce and its employees is affected by interstate commerce as a matter of law).

Additionally, the health benefits plan is administered out of state. Specifically, the plan administrator and director of benefits are located in Memphis, Tennessee. (*CR 88-89, 97*) Again, that connection is more than enough to "involve" interstate commerce to trigger application of the FAA. *See, e.g., In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding) ("Because 'commerce' is broadly construed, the evidence of Medicare payments made to HHC on John's behalf is sufficient to establish interstate commerce and the FAA's application in this case"); *City of San Antonio v. International Ass'n of Fire Fighters, Local 624*, Nos. 04-12-00783-CV and 04-13-00109-CV, 2013 WL 5508408, *2 (Tex. App. – San Antonio, Oct. 2, 2013, no pet., orig. proceeding) (mem. op.) (FAA applied to Collective Bargaining Agreement that encompassed provision of health insurance benefits); *Petroleum Analyzer Co. LP v. Franek Olstowki*, No. 01-09-00076-CV, 2010 WL 2789016, *6 (Tex. App. – Houston [1st

13

Dist.], Jul. 15, 2010, no pet.) (mem. op.) ("[E]ven if the parties had not expressly agreed that interstate commerce is affected, PAC is a Delaware limited partnership; therefore, this agreement affects interstate commerce."); *Manahan v. Meyer*, 862 S.W.2d 130, 133 (Tex. App. – Houston [1st Dist.] 1993, writ denied) ("Appellants pled that Haworth, a Michigan corporation with a home office in Michigan, bought insurance from Safeco, whose home office is in Washington, to cover Manahan and other Haworth employees working in Texas. Thus, interstate commerce by Haworth was admitted"); *United States v. Lauersen*, No. 98 CR. 1134(WHP), 1999 WL 637237, *6 (S.D.N.Y., Aug. 20, 1999) (not designated for publication) ("It requires little effort, and certainly no accretion of 'inference upon inference,' . . . to find a rational bases for concluding that the administration of private health care programs is an economic activity that substantially affects interstate commerce"). Based on the foregoing, the FAA controls.

**B. The Arbitration Agreement Encompasses Mario Flores' Claims; Regardless, the Issue Is One for the Arbitrator to Decide**

**1. The Arbitration Agreement Reserves for the Arbitrator's Decision the Issue of Whether Flores' Claims Fall within Its Scope**

As noted above, the arbitration provisions are broad in scope, covering all manner of personal injury, as well as all issues regarding relating to the enforcement or interpretation of the arbitration provisions and "[t]he determination of whether a claim is covered by these provisions." (*CR 80*) As courts have

14

recognized, when an arbitration agreement includes such expansive language, the determination of whether a claim falls within the scope of such an agreement is reserved for the arbitrator. *See, e.g., Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 & n.37 (Tex. 2008); *Seven Hills Commercial, LLC v. Mirabal Custom Homes, Inc.*, 442 S.W.3d 706, 711 (Tex. App. – Dallas 2014, pet. denied); *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 807-08 (Tex. App. – El Paso 2012, no pet.) ("An arbitration provision may give the arbitrator the power to resolve gateway issues regarding validity and enforceability of the arbitration agreement. In that event, the entire matter of arbitrability is transferred from the courts to the arbitrator. . . . Arbitration agreements that clearly and unmistakably show intent to assign gateway issues to the arbitrator are fully enforceable."), *citing Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72-73 (2010); *Ernst & Young LLP v. Martin*, 278 S.W.3d 497, 500-01 (Tex. App. – Houston [14th Dist.] 2009, no pet., orig. proceeding); *Valdez v. Autozone, Inc.*, No. H-14-3386, 2015 WL 1099700, *1 (S.D. Tex., Feb. 17, 2015) (not designated for publication).

Given the foregoing, the arbitration provisions expressly reserve any questions regarding the scope of the arbitration agreement and whether it encompasses Mario Flores' claims for the arbitrator's determination. Regardless, Mario Flores' claim for damages alleged to have resulted from an on-the-job injury clearly fall within the provisions' scope.

15

**2. Even if the Scope of the Arbitration Agreement Is an Issue for Judicial Determination, Flores' Personal Injury Claims Fall Well within the Agreement's Terms**

When deciding whether claims fall within the terms of an arbitration agreement, courts employ a strong presumption in favor of arbitration. *In re Rubiola*, 334 S.W.3d at 225, *citing Cantella & Co., Inc.*, 924 S.W.2d at 944 ("[f]ederal and state law strongly favor arbitration," and "a presumption exists in favor of agreements to arbitrate under the FAA"); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (orig. proceeding) (under the FAA, "any doubts as to whether claims fall within the scope of the agreement must be resolved in favor of arbitration," and that "[t]he policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue'").

Here, the provision in question requires, in part, that all claims for physical damage or harm made in connection with a job-related injury, are to be resolved by arbitration. (*CR 80*) Given that Mario Flores sues for precisely that, his claims fall within the arbitration provisions' scope. (*CR 9-16*) *See, e.g., In re HEB Grocery Co., L.P.*, 299 S.W.3d 393, 398 (Tex. App. – Corpus Christi, 2009, orig. proceeding) (agreement, which included provision to submit any claims for occupational injury to binding arbitration, encompassed claimant's personal injury

16

claim); *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App. – Houston [14th Dist.] 2000, orig. proceeding) (same). Because AutoZone demonstrated the existence of a valid agreement and claims that fall within its scope (though that issue is one for the arbitrator's determination), the trial court was obligated to grant AutoZone's motion. The Court should reverse the trial court's denial.

**III.    None of Appellee Flores' Efforts to Thwart the Arbitration Agreement Have Merit**

Once the movant has demonstrated a mandatory referral to arbitration and the party opposing arbitration has failed to prove a defense to its enforcement, the trial court has no discretion but to compel arbitration and stay its own proceedings. *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 753-54; *see also J.M. Davidson v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (stating that, if trial court finds a valid agreement, burden shifts to party opposing arbitration to raise an affirmative defense to enforcement). Appellee Flores tried to interpose three roadblocks to AutoZone's motion to compel: (1) the exception for "contracts of employment" contained in section 1 of the FAA; (2) the purported bar of the Texas Labor Code; and (3) a claim of procedural unconscionability. Courts have rejected all three in contexts analogous to this case and did so through binding precedent that this Court is bound to follow. Moreover, the language of the parties' arbitration agreement requires these threshold issues and defenses to be referred to arbitration for resolution by the arbitrator. Because Flores raises arguments that must be

17

decided by the arbitrator and has, in any event, failed to prove any defense, the trial court erred in denying the motion to compel.

### A. Courts Recognize That the Federal Arbitration Act's Exception for "Employment" Agreements Applies *Solely* to Transportation Workers, Unlike Appellee Flores

#### 1. Flores Cannot Argue an Exception to the FAA When He Expressly Agreed to the FAA's Application

Appellee Flores' first defense against enforcement of the arbitration agreement under the FAA was to point to section 1 of the FAA and argue that the benefits plan constitutes a "contract of employment" exempt from application of the FAA. *See* 9 U.S.C. § 1 ("nothing herein contained shall apply to contracts of employment of seaman, railroad employees, or other class of workers engaged in foreign or interstate commerce"). But, as discussed above, the parties expressly agreed to arbitrate their disputes pursuant to the Federal Arbitration Act. (*CR 82-83*) Given that express agreement, Flores cannot now argue that the FAA does not govern interpretation and enforcement. And any such argument would, by necessity, employ circular logic – for, it is only through application of the FAA that Flores invokes section 1's exception. (*CR 147*) It makes no sense for the parties to agree to arbitration and to agree that the FAA governs their agreement, only to be told that they have no enforceable agreement under the FAA because that invocation was contained in a "contract of employment."

## 2. Any Question Regarding Interpretation or Enforcement of the Agreement Must Be Decided by the Arbitrator

In fact, given the contract's express invocation of the FAA as well as its invocation of the AAA rules, the question asserted by Flores necessarily involves "enforcement or interpretation" of the agreement or at least a question of the arbitrator's jurisdiction – which the parties expressly agreed would be determined by the arbitrator. (*CR 80-83*) As noted above, parties may contract for threshold determinations to arbitrability to be made by the arbitrator himself – including a question of whether the exception contained in section 1 applies; and that is precisely what the parties did here. *See, e.g., Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 768-69 (8th Cir. 2011) (holding that parties, who invoked the AAA rules giving the arbitrator power to determine his own jurisdiction, agreed to allow the arbitrator to determine threshold questions such as whether section 1's exception applied to the parties' agreement to preclude governance of the FAA).

## 3. Regardless, the Supreme Court Has Limited the Exception to Transportation Workers Actually Engaged in the Interstate Transport of Goods

Regardless, the Supreme Court of the United States held in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112, 119 (2001), that section 1 applies only to "contracts of employment *of transportation workers*." (emphasis added); *accord EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the

19

[FAA]."); *see also BWI Cos. v. Beck*, 910 S.W.2d 620, 622 (Tex. App. – Austin 1995, orig. proceeding); *White-Weld & Co., Inc. v. Mosser*, 587 S.W.2d 485, 487 (Tex.Civ.App. – Dallas 1979, writ ref'd n.r.e.).

Importantly, the *Circuit City* Court explained that the phrase "engaged in . . . interstate commerce," as used in section 1's exemption, was considerably narrower than the phrase "involving commerce" used in section 2 to describe the kinds of agreements to which the FAA applies. 532 U.S. at 112. Flores, at the hearing on AutoZone's motion to compel, led the trial court astray by collapsing the two inquiries. (*RR at 7-8*) But they are different, as the Supreme Court of the United States has explained. The FAA applies to employment contracts that evidence a transaction involving interstate commerce – the only exception being when the employee is actually engaged in such commerce, *i.e.*, actually engaged in the transportation of goods. 9 U.S.C. §§ 1, 2; *Circuit City*, 532 U.S. at 114-19.

Appellee Flores made no argument and offered no evidence that he was a transportation worker actually engaged in the movement of goods in interstate commerce within the meaning of section 1 of the FAA. Rather, he confirmed his work in a single retail location – just like the retail employee the Supreme Court found did not fall within section 1's exception. *Circuit City*, 532 U.S. at 109. (*CR 145*) Rather than acknowledge governing Supreme Court authority, Flores offered a single citation to *In re Swift Transp. Co.*, 311 S.W.3d 484, 486 (Tex. App. – El

20

Paso 2009, orig. proceeding), in which the court of appeals held that the FAA did not apply to an arbitration agreement between a truck driver and his employer. But what Flores failed to understand is that trucks drivers *are* "transportation workers" as that term is used in section 1, making *In re Swift*'s holding inapplicable here to a retail employee. As a result, the trial court's order denying the AutoZone Appellants' motion to compel should be reversed and the agreement enforced.

## B.  The Texas Workers' Compensation Act Does Not Preclude Enforcement of the Plan's Arbitration Provisions, Nor Could It in Light of the Federal Arbitration Act's Supremacy[5]

Appellee Flores next asserted that the arbitration agreement violated section 406.033(e) of the Texas Labor Code because it waived his cause of action before his workplace injury occurred. That argument, too, lacks merit and provides no basis for the denial of AutoZone's motion to compel.

---

[5] In the context of this point, Appellee Flores references that the AutoZone Appellants did not sign the arbitration agreement and that he had no recollection of doing so. Assuming that this could be construed as an additional defense to the enforcement of the arbitration provisions, the FAA does not require arbitration clauses to be signed, as long as they are written and agreed to by the parties. *See, e.g., In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 606 n.5 (Tex. 2005); *see also In re Macy's Tex., Inc.*, 291 S.W.3d 418, 418 (Tex. 2009) (orig. proceeding) (per curiam) ("[t]he FAA contains no requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed"); *see also In re Dillard Dep't Stores*, 198 S.W.3d 778, 780-81 (Tex. 2006) (orig. proceeding) (at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law); *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002) (orig. proceeding) (holding that continued employment constituted acceptance as a matter of law). Regardless, Appellee Flores did sign the acknowledgement form, which reiterated his acceptance and agreement to comply with the plan's arbitration provisions. *See, e.g., In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 163 (Tex. 2006) (orig. proceeding) (by signing the acknowledgement, employee acknowledged receipt of the mutual agreement to arbitration claims); *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (orig. proceeding) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms."). (*CR 140*)

### 1. The Supreme Court of Texas Has Rejected This Exact Argument, and Flores Conceded as Much Below

Section 406.033(e) of the Texas Labor Code provides that a cause of action against an employer by an employee not covered by workers' compensation insurance brought to recover damages for personal injuries sustained in the course and scope of employment "may not be waived by an employee before the employee's injury or death." TEX. LAB. CODE § 406.033(a), (e) (West 2015). However, section 406.033(e) is no impediment to arbitration because the Supreme Court of Texas has rejected Flores' exact argument. *In re Golden Peanut Co., LLC*, 298 S.W.3d 629, 631 (Tex. 2009) (orig. proceeding) (per curiam).

Specifically, the Supreme Court examined the interaction between section 406.033 and the FAA and held that section 406.033(e) does not render an arbitration agreement void. *In re Golden Peanut Co., LLC*, 298 S.W.3d at 631. The Court explained that "an agreement to arbitration is a waiver of neither a cause of action nor the rights provided under section 406.033(a), but rather an agreement that those claims should be tried in a specific forum. Accordingly, section 406.033(e) does not render the arbitration agreement void." *See also In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 423 (Tex. 2010) (orig. proceeding) (same).

In apparent recognition of this precedent, Flores withdrew the point at the hearing on AutoZone's motion to compel. (*RR at 7*) Thus, to the extent that this argument would not also be subject to arbitration as one of the threshold questions

the parties agreed would be resolved by the arbitrator – because the parties agreed to submit all issues of the agreement's interpretation and enforcement to arbitration – Flores' concession and binding Supreme Court precedent preclude it anyway.

### 2. To the Extent Section 406.003(e) Would Preclude Arbitration, the FAA Would Preempt It

Moreover, the FAA would preempt section 406.033(e) to the extent that it would preclude an otherwise unenforceable arbitration agreement. Under the supremacy clause of the United States Constitution, the FAA preempts all otherwise applicable state laws. U.S. CONST. art. VI, cl.2; *see also Southland Corp. v. Keating*, 465 U.S. 1, 14-16 (1984) (Federal Arbitration Act creates substantive rules applicable in state and federal courts to prevent states from limiting the enforceability of arbitration agreements). By enacting the FAA, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. *Southland*, 465 U.S. at 16.

"In short, the FAA 'represents a federal policy favoring arbitration, notwithstanding any state substantive or procedural policies to the contrary." *In re MP Ventures of So. Tex., Ltd.*, 276 S.W.3d 524, 529 (Tex. App. – San Antonio 2008, orig. proceeding), *quoting In re Border Steel, Inc.*, 229 S.W.3d 825, 831 (Tex. App. – El Paso 2007, orig. proceeding); *see also Jack B. Anglin Co.*, 842 S.W.2d at 270-71 (holding that FAA preempts application of non-waiver provision of the Texas Deceptive Trade Practices Act); *In re Turner Bros. Trucking Co.*, 8

23

S.W.3d 370, 374 (Tex. App. – Texarkana 1999, orig. proceeding) (the FAA "takes precedence over state attempts, legislative or judicial, to undercut the enforceability of arbitration agreements"). As a result, to the extent section 406.033(e) could be said to conflict with the FAA following *In re Golden Peanut Co.*, to the extent Flores did not concede the point below, and to the extent the issue were one for the Court to decide, the FAA would preempt section 406.033(e) and preclude it from barring enforcement of the parties' arbitration agreement. *See In re Border Steel, Inc.*, 229 S.W.3d 825, 832 (Tex. App. – El Paso 2007, no pet.).

## C. Appellee Flores Failed to Demonstrate Procedural Unconscionability[6]

### 1. Appellee Flores Attacked the Parties' Agreement as a Whole – an Argument That the Supreme Court of the United States Has Held Must Be Resolved by the Arbitrator

In the trial court, Appellee Flores asserted that the arbitration agreement was procedurally unconscionable because he was unable to read the English version with which he was provided. (*CR 149-51*) While arbitration agreements "may be

---

[6] Flores' response specifically argues only procedural unconscionability. (*CR 149-51; RR 8-11*) That said, he sprinkles references to substantive unconscionability in that same discussion, without making any argument that the agreement is substantively unconscionable. (*CR 149-51; RR 9*) To be thorough, the AutoZone Appellants would note that the Supreme Court of Texas has held that "there is nothing per se unconscionable about arbitration agreements." *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) (orig. proceeding), *quoting EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90-91 (Tex. 1996) (orig. proceeding) (per curiam). Instead, both Texas and federal courts *favor* arbitration. *Id.* Likewise, "[a]dhesion contracts are not automatically or per se unconscionable," including those that contain arbitration provisions. *In re Lyon Fin. Servs.*, 257 S.W.3d 228, 233 (Tex. 2008) (orig. proceeding). Moreover, "[b]ecause an employer has a general right under Texas law to discharge an at-will employee, it cannot be unconscionable, without more, merely to premise continued employment on acceptance of new or additional employment terms." *In re Halliburton Co.*, 80 S.W.3d at 572.

24

invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,'" (*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)), Flores necessarily attacks the benefits agreement as a whole – as opposed to the arbitration agreement exclusively. The arbitration provisions at issue were one part of a larger occupational injury benefit plan, which Appellee Flores acknowledged by his signature on July 28, 2005. (*CR 140*) Flores' claim of invalidity by virtue of being unable to read any part of that agreement necessarily challenges the entire agreement rather than just the arbitration provision in particular.

Arguments against the validity of an agreement, of which an arbitration provision is merely a part, are referable to arbitration along with the rest of the case. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1966). In *Prima Paint*, a party defended against a referral to arbitration on the basis that it had been fraudulently induced to sign the contract containing the arbitration provision. 388 U.S. at 404. Settling a conflict among the appellate courts, the Supreme Court of the United States held that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Id.* "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) (holding that

*Prima Paint* rule also applies to FAA cases pending in state courts, as a matter of substantive federal arbitration law). "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 561 U.S. at 70.

Following these principles, Texas courts have held that the defense of unconscionability must be determined by the arbitrator when it necessarily refers to the agreement as a whole. *See, e.g., In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 898 (Tex. 2010) (orig. proceeding) ("[W]hen the parties have contracted for arbitration of their disputes, a trial court 'may consider only issues relating to the making and performance of the agreement to arbitrate."); *Perry Homes v. Cull,* 258 S.W.3d 580, 589 (Tex. 2008) ("[A]rbitrators generally must decide defenses that apply to the whole contract, while courts decide defenses relating solely to the arbitration clause."); *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756 ("The do Los Santoses assert the defenses of unconscionability, duress, fraudulent inducement, and revocation. We again note that these defenses must specifically relate to the Arbitration Addendum itself, not the contract as a whole, if they are to defeat arbitration."); *Henry v. Gonzalez*, 18 S.W.3d 684, 691 (Tex. App. – San Antonio 2000, pet. dism'd, orig. proceeding) (allegation by non-movant that he was fraudulently induced to sign the contract containing arbitration clause due to his decreased mental capacity was an issue referable to arbitration).

In a case bearing striking similarities to the circumstances alleged here, a federal district court held that a claim of procedural unconscionability was for the arbitrator to determine. *See Estate of Benitez v. Sears, Roebuck & Co.*, No. 3:13-CV-0468-D, 2013 WL 4223875 (N.D. Tex., Aug. 14, 2013). There, the claimant argued that he could not read or write English and had little formal education in Spanish and, therefore, the arbitration agreement was invalid. *Id.* at *3. The court held that "because plaintiffs' challenge to validity attacks the entire agreement, not the arbitration agreement specifically, [it] therefore is a question for the arbitrator to decide." *Id.* at **3-4 ("[T]he arbitration agreement in this case is contained within the 51-page Plan; it is not a stand-alone agreement. And when Juan electronically acknowledged that he had completed his Plan training, he was acknowledging that he had received training regarding the Plan and its requirements generally, which included the arbitration agreement. Plaintiffs provide no evidence that Juan's illiteracy in English, limited English comprehension, or computer illiteracy invalidate the arbitration clause *specifically* rather than the Plan in its entirety.") (emphasis in original).

Because the claim of unconscionability went to the plan as a whole – even though the plaintiffs only desired to invalidate the arbitration clause – the decision was for the arbitrator to make in this case just as in *Estate of Benitez*. As a result, the trial court erred in denying AutoZone's motion to compel.

27

### 2. Even Assuming a Court Could Decide the Issue, This Court Has Held That Illiteracy Is No Defense to Arbitration

In any event, Appellee Flores' defense of procedural unconscionability based on his purported illiteracy in English finds no support in binding Texas law. Flores had the burden of showing that the arbitration provision is unconscionable – a burden he failed to meet. *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002) ("The party contesting the contractual arbitration provision has the burden to show procedural unconscionability."). Instead, the great weight of authority – including binding precedent from the Supreme Court of Texas and this Court – has rejected Appellee Flores' attempted defense on a similar record.

### a. Flores' "Proof" Constitutes Barred Parol Evidence and, Thus, Cannot Be Considered by the Court

Flores' unconscionability defense focused on his alleged inability to read, in English, the benefits plan and the arbitration provisions that were provided to him initially. As discussed in detail below, Texas law provides no contractual defense based on an inability to read English. Regardless, the parol evidence rule precludes the Court from considering any evidence Flores attempted to offer.

The acknowledgement form signed by Flores expressly avows that he received and read, or had the opportunity to read, the materials attached to AutoZone's motion to compel, including the arbitration provisions. (*CR 140*) This is in addition to the front cover of the plan, which includes a notice in Spanish

providing a contract for further discussion of the plan in Spanish. (*CR 101*) As a result, any claim by Flores that he could not read or did not have the opportunity to read the plan documents in Spanish contradicts their express terms and cannot be considered. *See, e.g., In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 371 (Tex. App. – Houston [14th Dist.] 2000, orig. proceeding); *see also Kuper v. Schmidt*, 161 Tex. 189, 338 S.W.2d 948, 952 (1960) (explaining that parol evidence rule precludes consideration of extrinsic evidence to contradict, vary, or add to the terms of an unambiguous written agreement absent fraud, accident, or mistake); *see also Cintas Corp. v. Quevedo*, No. 04-11-00142-CV, 2012 WL 1940642, *3 (Tex. App. – San Antonio, May 30, 2012, no pet.) (mem. op.) ("The parol evidence rule is not a rule of evidence, but a rule of substantive law. . . . Testimony that varies the legal effect of a writing, whether objected to or not, is without probative force."). Flores is without evidence to support a procedural unconscionability defense, and the trial court erred in denying AutoZone's motion to compel.

> **b. Texas Law Does Not Recognize an Inability to Read English as a Defense to Contract – Even with an Unconscionability Label – and Flores Offered No Supportive Evidence in Any Event**
>
>> **i. Flores Offered No Proof of an Inability to Speak, Read, or Write English**

Generally speaking, procedural unconscionability refers to the circumstances surrounding the adoption of a contract. *In re Halliburton Co.*, 80 S.W.3d at 571.

It relates to the making or inducement of the contract, focusing on the facts surrounding the bargaining process. *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 792 (Tex. App. – Houston [14th Dist.] 2007, pet. denied, orig. proceeding). Again, Flores based his assertion of procedural unconscionability on his claim that he cannot read or write English, coupled with his claim that the plan documents he received were in English. (*CR 149-51*) However, even assuming Flores' proffer could be considered, Flores offered absolutely no evidence that he could not speak, read, or write English. His initial affidavit avers only that he did not receive the AZTEC Advantage document in Spanish. (*CR 155*) It nowhere denies an ability to read the English version that he acknowledged he did receive. (*CR 140*) And the "evidence" he tried to offer by way of his post-hearing supplement likewise falls far short of that needed to prove an unconscionability defense.

After the hearing on AutoZone's motion to compel, Flores filed supplemental evidence, to which AutoZone objected. (*CR 203-87, 288-93*) That offer consisted of employment forms and the transcripts of telephone conversations that purportedly had been translated from Spanish to English. (*CR 207-87*) Those documents nowhere demonstrate Flores' inability to speak, read, or write English. Indeed, on their face, many of them demonstrate precisely the opposite. To fill in the blanks, Flores offered only unsworn statements of his purported inability to speak, read, or write English – in the notice of filing to which the supplemental

evidence was attached. (*CR 204*) However, neither statements contained in motions nor arguments of counsel are evidence. *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 669 (Tex. App. – Dallas 2003, no pet.); *Madeksho v. Abraham, Watkins, Nichols & Friend*, 57 S.W.3d 448, 455 (Tex. App. – Houston [14th Dist.] 2001, pet. denied) (noting that conclusory arguments contained in summary-judgment response are not evidence). Flores failed to include in the record any evidence to substantiate his claim of procedural unconscionability.

### ii. Texas Does Not Recognize Illiteracy as a Defense to Contract Generally or as a Defense to Arbitration Specifically

Regardless, Texas courts have held for decades that, absent proof of mental incapacity, a person who signs a contract is presumed to have read and understood that contract unless he was prevented from doing so by trick or artifice. *See Associated Employers Lloyds v. Howard*, 156 Tex. 277, 294 S.W.2d 706, 708 (1956); *Indemnity Ins. Co. of N. Am. v. W.L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553, 556-57 (1937). Equally well-settled is that illiteracy will not relieve a party from the consequences of a contract because "[e]very person who has the capacity to enter into a contract, in the absence of fraud, misrepresentation, and concealment, is held to know what words were used in the contract, to know their meaning, and to understand their legal effect." *Vera v. North Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex. App. – San Antonio 1998, no pet.).

31

Numerous courts have rejected allegations similar to those asserted by Flores in an effort to avoid an otherwise binding agreement. *See, e.g., Lopez v. Garbage Man, Inc.*, No. 12-08-00384-CV, 2011 WL 1259523, **7-8 (Tex. App. – Tyler, Mar. 31, 2011, no pet.) (mem. op.) (reiterating principles set forth above and rejecting challenge to release agreement based on claim that plaintiff was limited in his ability to read or write English and, thus, unable to understand complex legal document such as release agreement); *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 878 (Tex. App. – El Paso 2005, orig. proceeding) ("No evidence suggests that Marquez lacked the mental capacity to contract. She argues that she was rushed to sign the agreement and did not understand its terms. The undisputed evidence is that she signed the agreement, was injured on the job and actually received and accepted benefits under the plan. The fact that she now contends that she did not understand a specific clause or term is immaterial to the validity of the agreement."); *De Villagomez v. First Nat'l Bank*, No. 13-04-00367-CV, 2005 WL 1832800, **1-2 (Tex. App. – Corpus Christi, Aug. 4, 2005, pet. denied) (mem. op.) ("In the absence of fraud, a party's failure to read an instrument before signing it is not a ground for avoiding it. . . . This is true even in the case of illiteracy or an inability to read English."); *Tamez v. Southwestern Motor Transport, Inc.*, 155 S.W.3d 564, 570 (Tex. App. – San Antonio 2004, no pet.) (reiterating principles set forth above and holding that the plaintiff, a resident alien from Mexico and for

32

whom English was not his first language, was bound by release agreement absent evidence of fraud, misrepresentation, or concealment in the procurement of the agreement, of which there was no evidence); *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144, 146 (Tex. App. – Houston [1st Dist.] 1986, no writ) (rejecting challenge to contract by one claiming that he could not read, write, or speak English).

In *In re Ledet*, No. 04-04-00411-CV, 2004 WL 2945699, **4-6 (Tex. App. – San Antonio, Dec. 22, 2004, orig. proceeding) (mem. op.), this Court applied these well-entrenched principles of Texas contract law to reject a claim of procedural unconscionability by one seeking to avoid an arbitration agreement. In that case, the claimant asserted procedurally unconscionability of an arbitration agreement based on his inability to understand, speak, or read English; the failure of anyone to explain the agreement to him; and his having felt pressured to sign the arbitration agreement. *Id.* at *5. The claimant did not ask questions about the agreement or seek an explanation of it. *Id.*

The *Ledet* Court referenced its prior decision in *Vera* and noted the absence of any allegation of fraud, misrepresentation, or concealment. 2004 WL 2945699, at **5-6. "That [the claimant] did not speak English and therefore could not read the contract does not affect the validity of the contract." *Id.* at *6. The Court enforced the arbitration agreement and held that the trial court had no discretion

but to compel arbitration and stay its own proceedings. *Id.*; *see also ReadyOne Indus., Inc. v. Flores*, ___ S.W.3d ___, 2014 WL 6982275, \*\*8-9 (Tex. App. – El Paso, Dec. 10, 2014, pet. filed) (rejecting defense of procedural unconscionability asserted by claimant who was unable to read English because company provided him with Spanish language version of documents and because claimant, who signed acknowledgment form, was presumed to have known and fully comprehended document and its legal effect absent evidence of trick or artifice); *In re Border Steel, Inc.*, 229 S.W.3d 825, 833-35 (Tex. App. – El Paso 2007, orig. proceeding) (rejecting claim of procedural unconscionability due to Spanish speaking individual's inability to read agreement in English; evidence showed that agreement was available in both English and Spanish translations, and illiteracy or a language barrier is no defense to contract; moreover, claimant accepted benefits under the plan); *In re Rangel*, 45 S.W.3d 783, 786-87 (Tex. App. – Waco 2001, orig. proceeding) (rejecting claim of procedural unconscionability asserted by 75-year-old man who had never attended school, was functionally illiterate, and was hard of hearing; claimant never gave the impression he did not understand or could not read the contract, the arbitration provision was never hidden from him, and there was no evidence that the company concealed or misstated the existence or terms of the arbitration provision). Flores has no unconscionability defense here.

### iii. This Court Has Rejected Flores' Authority, and Flores Offered No Evidence of Fraud on AutoZone's Part Regardless

Despite this clear precedent, Flores relied on two decisions to support a defense of procedural unconscionability here: *In re Turner Bros. Trucking Co., Inc.*, 8 S.W.3d 370 (Tex. App. – Texarkana 1999, orig. proceeding); and *Prevot v. Phillips Petroleum Co.*, 133 F.Supp.2d 937 (S.D. Tex. 2001). In *In re Turner Bros.*, the court held an arbitration agreement to be procedurally unconscionable where the employees who presented the agreement did not understand it, the relator had no one to explain the document and did not understand it, and the claimant was functionally illiterate and had a reading disorder. 8 S.W.3d at 377. And in *Prevot*, the claimants testified that they could not read English and that the documents were not translated for them. 133 F.Supp.2d at 940. Further, they testified that their supervisors told them not to worry about the nature of the agreement and to quickly sign the document so they could get back to work. *Id.*

Both of those decisions are distinguishable from the circumstances here. There is no evidence that AutoZone personnel did not understand the agreement or that Flores asked any questions or sought an explanation of the agreement. Rather, the evidence is precisely the opposite. (*CR 172-202*) Though AutoZone explained that it had no reason to know that Flores could not read English – personnel had conversations with Flores in English, and Flores routinely furnished completed

company documents in English – Spanish materials were available to Flores in the event he had asked. (*CR 172-78, 192-202*) However, Flores never sought a Spanish translation or any other assistance with the plan document, though both were readily available. (*CR 175-78*) AutoZone provided a notice in Spanish on the face of the benefit summary and also made available the contract documents in Spanish. (*CR 101, 172-78*) Flores not only signed the acknowledgement form in 2005, but he also acknowledged that he had read and understood the plan documents again in 2011 and 2012 – this time through a computer system that provided a Spanish translation of all relevant documents by merely clicking a button to make a Spanish-language selection. (*CR 174-75, 180, 182, 187-91*)

In any event, this Court has rejected the holding in *In re Turner Bros.* because "it is in direct conflict with [the Court's] holding in *Vera* that illiteracy is not a defense to contract formation." *In re Ledet*, 2004 WL 2945699, at \*6. And, of course, neither a decision from the Texarkana Court of Appeals nor from a federal district court binds this Court. *See, e.g., Penrol Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) ("While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate federal rule of decision, they are *obligated* to follow only higher Texas courts and the United States Supreme Court.") (emphasis in original).

Moreover, under the doctrine of horizontal *stare decisis*, the Court's prior holdings in *Vera* and *In re Ledet* govern and control the outcome here. Under the doctrine, a panel of this Court is bound by a prior holding of another panel of this Court absent an intervening, on point, and contrary holding from a higher court or this Court sitting *en banc*. *Glassman v. Goodfriend*, 347 S.W.3d 772, 781 (Tex. App. – Houston [14th Dist. 2011, pet. denied) (en banc); *see also Medina v. Tate*, 438 S.W.3d 583, 588 (Tex. App. – Houston [1st Dist.] 2013, no pet.) (same); *MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.*, 260 S.W.3d 561, 566 (Tex. App. – Dallas 2008, no pet.) (same). *Stare decisis* emanates from a desire for predictability in the law, which allows people to rationally order their conduct and affairs. *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000). No intervening decision of either the Supreme Court of the United States, the Supreme Court of Texas, or this Court *en banc* has held contrary to the Court's holdings in *Vera* or *In re Ledet*. Rather, decisions made by the Supreme Court of Texas are in accord. As such, those decisions govern here and require a reversal of the trial court's order.

And, in a more reasoned and persuasive federal decision, the court in *Estate of Benitez* held that the plaintiffs did not demonstrate unconscionability. 2013 WL 4223875, at *4. The court turned to the mountain of Texas precedent rejecting illiteracy as a defense to contract. *Id.* The court also addressed those decisions

37

that have found procedural unconscionability based, in part, on English illiteracy – noting that they all involved other facts indicating that the signatory was denied an opportunity to review and understand the agreement, beyond simply being unable to read English. *Id.* This included instances not present here: (1) the employer knew the employee did not speak English, explained some of the agreement in Spanish, but did not translate the arbitration provision; (2) no one was available to explain the agreement to the employee, including the representative who gave him the agreement and did not himself understand it; and (3) the employees were told not to worry about the contents of the agreement and to hurry up and sign it so that they could get back to work. *Id.* By contrast, the evidence before the *Benitez* court showed that the plan was available in both English and Spanish – just as here. *Id.* at \*5. Following *Vera*, *Ledet*, *Tamez*, and *Benitez*, the Court should reject the claimed defense of procedural unconscionability and compel Flores to resolve his claims by arbitration.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Appellants AutoZone, Inc. and AutoZoners, L.L.C. respectfully request that this Court reverse the trial court's order denying their Motion to Compel Arbitration, that the Court render judgment enforcing the parties' arbitration agreement by compelling arbitration and staying

the trial court's proceedings pending arbitration, and that the Court grant Appellants such other and further relief to which they are entitled.

Respectfully submitted,

BRETT REYNOLDS & ASSOCIATES, P.C.
Brett T. Reynolds
State Bar No. 16795500
btreynolds@btrlaw.com
P. Brook Swilley
State Bar No. 24041997
pbswilley@btrlaw.com
1250 N.E. Loop 410, Suite 420
San Antonio, Texas 78209
(210) 805-9799
(210) 805-9654 (telecopier)

THE LAW OFFICE OF
JACQUELINE M. STROH, P.C.
Jacqueline M. Stroh
State Bar No. 00791747
jackie@strohappellate.com
10101 Reunion Place, Suite 600
San Antonio, Texas  78216
(210) 477-7416
(210) 477-7466 (telecopier)

By:   /s/ Jacqueline M. Stroh
Jacqueline M. Stroh

ATTORNEYS FOR APPELLANTS
AUTOZONE, INC. AND AUTOZONERS, L.L.C.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

Pursuant to Texas Rule of Appellate Procedure 9.4(i), the undersigned certifies that this brief complies with the type-volume limitations; that, exclusive of the exempted portions, the brief contains 9,708 words (counting all appropriate footnotes); and that the brief has been prepared in proportionally-spaced typeface using Times New Roman Font 14 in body text and Font 12 in footnotes.

/s/ Jacqueline M. Stroh
Jacqueline M. Stroh

39

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing Brief of Appellants was on the

23rd day of June, 2015, served by in accordance with the Texas Rules of Appellate

Procedure on the following counsel of record:

Jaime M. Lynn
jlynn@carlsonattorneys.com
Kiara Martinez
kmartinez@carlsonattorneys.com
THE CARLSON LAW FIRM, P.C.
11606 North Interstate Highway 35
Austin, Texas 78753
*-and-*
400 West Jasper Road
Killeen, Texas 76542
*Attorneys for Plaintiff*

/s/ Jacqueline M. Stroh
Jacqueline M. Stroh

| | | |
|---|---|---|
| MARIO FLORES,<br>Plaintiff | §<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§ | 229TH JUDICIAL DISTRICT |
| AUTOZONE, INC. AND AUTOZONERS<br>L.L.C. D/B/A AUTOZONE #3115,<br>Defendants | §<br>§<br>§ | STARR COUNTY, TEXAS |

## ORDER

On this day, came to be heard "Defendants' Motion to Compel/Enforce Arbitration." After considering Defendants' Motion, Plaintiff's Response, the evidence introduced, and arguments by counsel, the Court hereby **DENIES** Defendants' Motion to Compel/Enforce Arbitration in its entirety.

SIGNED this _27_ day of ___April___, 2015.

_____
JUDGE PRESIDING

## § 1. "Maritime transactions" and "commerce" defined; exceptions to operation of title

"Maritime transactions", as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

## § 2. Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

## § 3. Stay of proceedings where issue therein referable to arbitration

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

## § 4. Failure to arbitrate under agreement; petition to United States court having jurisdiction for order to compel arbitration; notice and service thereof; hearing and determination

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.


## § 5. Appointment of arbitrators or umpire

If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then

upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

## § 6. Application heard as motion

Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.

## § 7. Witnesses before arbitrators; fees; compelling attendance

The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

## § 8. Proceedings begun by libel in admiralty and seizure of vessel or property

If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to

proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

## § 9. Award of arbitrators; confirmation; jurisdiction; procedure

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court.

## § 10. Same; vacation; grounds; rehearing

**(a)** In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--

**(1)** where the award was procured by corruption, fraud, or undue means;

**(2)** where there was evident partiality or corruption in the arbitrators, or either of them;

**(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

**(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

**(b)** If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

**(c)** The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

## § 11. Same; modification or correction; grounds; order

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration--

**(a)** Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

**(b)** Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

**(c)** Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

## § 12. Notice of motions to vacate or modify; service; stay of proceedings

Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or

delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court. For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

## § 13. Papers filed with order on motions; judgment; docketing; force and effect; enforcement

The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk:

**(a)** The agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award.

**(b)** The award.

**(c)** Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application.

The judgment shall be docketed as if it was rendered in an action.

The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.

## § 14. Contracts not affected

This title shall not apply to contracts made prior to January 1, 1926.

## § 15. Inapplicability of the Act of State doctrine

Enforcement of arbitral agreements, confirmation of arbitral awards, and execution upon judgments based on orders confirming such awards shall not be refused on the basis of the Act of State doctrine.

## § 16. Appeals

**(a)** An appeal may be taken from--

**(1)** an order--

**(A)** refusing a stay of any action under section 3 of this title,

**(B)** denying a petition under section 4 of this title to order arbitration to proceed,

**(C)** denying an application under section 206 of this title to compel arbitration,

**(D)** confirming or denying confirmation of an award or partial award, or

**(E)** modifying, correcting, or vacating an award;

**(2)** an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

**(3)** a final decision with respect to an arbitration that is subject to this title.

**(b)** Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order--

**(1)** granting a stay of any action under section 3of this title;

**(2)** directing arbitration to proceed under section 4 of this title;

**(3)** compelling arbitration under section 206 of this title; or

**(4)** refusing to enjoin an arbitration that is subject to this title.

# AZTEX ADVANTAGE:

# AUTOZONE TEXAS OCCUPATIONAL INJURY BENEFIT PLAN

## Effective August 1, 2005
### (Revised as of April 1, 2008)

## SUMMARY PLAN DESCRIPTION

NOTICE TO ENGLISH SPEAKING AUTOZONERS: This booklet contains a summary in English of your plan rights and benefits under the AZTEX Advantage: AutoZone Texas Occupational Injury Benefit Plan. If you have difficulty understanding any part of this booklet, contact Risk Manager at 123 S. Front Street, Memphis, TN 38103, (901) 495-6500. Office hours are from 8:00 a.m. to 5:00 p.m., Monday through Friday.

AVISO A LOS EMPLEADOS QUE NO HABLAN INGLES: Este folleto contiene un resumen en inglés de los derechos y beneficios de su plan bajo el Plan de Lesiones AZTEX Advantage: AutoZone Texas Ocupacionales Injury Benefit Plan For Texas AutoZoners. Si tiene dificultad en entender cualquiera parte de este folleto, contacte a Risk Manager en el 123 S. Front Street, Memphis, TN 38103, (901) 495-6500. Las horas de oficina son de 8:00 a.m. a 5:00 p.m., de lunes a viernes.

© Copyright 2005 PartnerSource, Inc.
Rev. 4/1/05



EXHIBIT
A-1

0101

# RESOLUTION OF CERTAIN INJURY-RELATED DISPUTES

AutoZone has adopted a **mandatory policy** requiring that you comply with the following dispute resolution requirements.

## Dispute Resolution Requirement

All claims or disputes described below that cannot otherwise be resolved between AutoZone and you are subject to the **dispute resolution** program described in this Plan. **This program is the only method for resolving any such claim or dispute.**

## Claims Covered By This Requirement

This requirement applies to:

> any legal or equitable claim or dispute relating to enforcement or interpretation of the arbitration provisions in an AZTEX Advantage Acknowledgement Form or this arbitration requirement; and

> any legal or equitable claim by or with respect to you for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma (including, but not limited to, claims of negligence or gross negligence or discrimination; and claims for assault, battery, negligent hiring/training/supervision/retention, emotional distress, retaliatory discharge, or violation of any other noncriminal federal, state or other governmental common law, statute, regulation or ordinance in connection with a job-related injury, regardless of whether the common law doctrine was recognized or whether the statute, regulation or ordinance was enacted before or after the effective date of this booklet).

This includes all claims listed above that you have now or in the future against AutoZone, its officers, directors, owners, AutoZoners, representatives, agents, subsidiaries, affiliates, successors, or assigns. This does not, however, include any legal or equitable claim under ERISA for benefits, fiduciary breach, or other problem or relief solely relating to benefits payable under this Plan.

The determination of whether a claim is covered by these provisions will also be subject to mediation and arbitration under this dispute resolution requirement. **Neither you nor AutoZone will be entitled to a bench or jury trial on any claim covered by this dispute resolution requirement. This dispute resolution requirement applies to you without regard to whether you have completed and signed an AZTEX Advantage Acknowledgement Form.** These provisions also apply to any claims that may be brought by your spouse, children, parents, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns. The dispute resolution provisions of this Plan will be the sole and exclusive remedy for resolving any such claim or dispute.

© Copyright 2005 PartnerSource, Inc.
Rev. 4/1/05

0080

## Mediation Prior to Arbitration

If you have a claim or dispute, you must first seek resolution of the problem through mediation before you request arbitration.

## Required Notice of All Claims

**Mediation:** When you seek mediation, you must give written notice to the other party. You must send written notice to AutoZone, Inc., in care of Litigation Manager, P. O. Box 2198 Memphis, TN 38101-9842. If AutoZone wishes to seek mediation, AutoZone will give notice to you at the last address recorded in your personnel file.

**Arbitration:** If the issue is not resolved through mediation, you must request arbitration. When you seek arbitration, you must give written notice of any claim to the other party within the applicable statute of limitations. The day the act complained of occurred will be counted for purposes of determining the applicable period. If such notice is not given, the claim shall be void and deemed waived.

You must send written notice in triplicate to the American Arbitration Association, Attention: Regional Claims Administrator, at 13455 Noel Road, Two Galleria Tower, Suite 1750, Dallas, Texas, 75240-6620. You must also send written notice to AutoZone, in care of Litigation Manager, AutoZone, Inc., P. O. Box 2198, Memphis, TN 38101-9842. If AutoZone wishes to invoke arbitration, it will give notice to you at the last address recorded in your personnel file. The party requesting arbitration must identify and describe the nature of all claims asserted and the facts on which the claims are based. This written notice shall be sent certified or registered mail, return receipt requested.

## Mediation Procedures

Mediation under this Section will be handled by a mediator appointed by the American Arbitration Association ("AAA") who is skilled in handling conflicts. The goal of mediation is to develop a solution that satisfies both parties in a way that strengthens the working relationship. The mediator will listen to both sides and will offer creative solutions to the problem. If the parties cannot agree to a solution through a mediator, either party may request arbitration.

## Arbitration Procedures

Any arbitration under this arbitration requirement will be administered by the American Arbitration Association ("AAA") under its then-current Employment Arbitration Rules and Mediation Procedures. Unless otherwise agreed to in writing by the parties, the arbitrator selected by the parties in accordance with those rules (1) shall be an attorney licensed to practice in the State of Texas with experience in personal injury litigation, and (2) shall be selected from a panel of arbitrators located in Dallas County, Texas. If the arbitrator so selected becomes unable to serve for any reason, the parties shall again go through the same selection process. The arbitrator will apply the substantive law (and the laws of remedies) of Texas (other than the Texas General Arbitration Act), or federal law, or both, depending upon the claims asserted. The arbitrator will provide brief findings of fact and conclusions of law. The final decision and the arbitration award, if any, shall be made consistent with remedies available under Texas statute and case law. All

© Copyright 2006 PartnerSource, Inc.
Rev.4/1/08

**0081**

decisions rendered by an arbitrator under this arbitration requirement will be kept confidential by all parties, and will not serve as binding, legal precedent with respect to subsequent claims or disputes brought under this arbitration requirement.

## Payment of Fees and Expenses

➤ **Mediation:** The AAA filing fee for mediation will be at least $325. Your share of this cost is $50. Your Employer will pay the remainder of the AAA filing fee. Your Employer will also pay the mediator's entire fee and any other AAA administrative expenses.

➤ **Arbitration:** You shall pay a nonrefundable arbitration filing fee equal to the standard employee filing fee specified under then-current AAA Employment Arbitration Rules and Mediation Procedures. Your filing fee must be paid when you submit a request for arbitration (or, if this process is challenged by you, when arbitration is compelled by court order). AutoZone shall pay a nonrefundable arbitration filing fee equal to the standard employer filing fee specified under then-current AAA Employment Arbitration Rules and Mediation Procedures. AutoZone will also pay the arbitrator's entire fee and any other AAA administrative expenses; provided, however that you may elect to also pay up to one-half of these fees and expenses.

- If the arbitrator finds completely in your favor on all claims, AutoZone will reimburse you for your share of the filing fee.

- If AutoZone requests arbitration (by means other than a motion in court to compel arbitration), you will pay no portion of the AAA or arbitrator fees.

- Either party may arrange for and pay the cost of a court reporter to provide a stenographic record of the proceedings;

- Each party will also be responsible for their own attorney's fees, if any. However, if any party prevails on a statutory claim which allows the prevailing party to be awarded attorney's fees, or if there is a written agreement providing for such fees, the arbitrator may award reasonable attorney's fees to the prevailing party;

- Notwithstanding the above provisions, the arbitrator will assess the AAA filing fee, arbitrator fees and expenses, and attorney's fees against a party upon a showing by the other party that the first party's claim is frivolous, or unreasonable, or factually or legally groundless; and

➤ If either party pursues a claim covered by this dispute resolution requirement by any means other than the dispute resolution provisions of this Plan, the responding party will be entitled to dismissal of such action.

## Interstate Commerce

AutoZone is engaged in transactions involving interstate commerce (for example, purchasing goods and services from outside Texas which are shipped to Texas and providing goods and services to customers from other states) and your employment involves such commerce. The

© Copyright 2005 PartnerSource, Inc.
Rev.4/1/06

**0082**

Federal Arbitration Act will govern the interpretation, enforcement, and proceedings under this arbitration requirement. Unless contrary to applicable law, any lawsuits seeking to enforce or vacate an arbitration award shall be brought in the United States District Court for the Northern District of Texas, Dallas Division.

## Binding Effect

This arbitration requirement for resolving claims by final and binding arbitration is equally binding upon, and applies to any such covered claims that may be brought by, AutoZone and all Plan participants, including you and your spouse, children, parents, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns. This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute. **This arbitration requirement applies to all Plan participants without regard to whether they have completed and signed an AZTEX Advantage Acknowledgement Form.** Adequate consideration for this arbitration requirement is represented by, among other things, your eligibility for (and not necessarily any receipt of) benefits under this Plan and the fact that it is mutually binding on both AutoZone and you. Any actual payment of benefits under this Plan to or with respect to you will serve as further consideration for and represent your further agreement to the provisions of this arbitration requirement. This arbitration requirement will remain in effect with respect to AutoZone and you even if you refuse benefits under this Plan, you return Plan benefit payments to AutoZone, you become ineligible for benefits or benefits cease under this Plan in accordance with its terms, or your employment with AutoZone is voluntarily or involuntarily terminated. **This arbitration provision is not subject to ERISA requirements or otherwise dependent upon the benefit provisions of this Plan in any way, and is included in this booklet strictly as a matter of convenience in documentation.** This Plan and arbitration requirement also in no way changes the "at will" employment status of any participant not covered by a collective bargaining agreement.

# AMENDMENT OR TERMINATION OF PLAN

AutoZone presently intends to continue the Plan indefinitely, but reserves the right to amend, modify, or terminate the Plan at any time; provided, however, that no such amendment or termination will alter the arbitration provisions of the Plan with respect to, or reduce the amount of any benefit payable to or with respect to you under the Plan in connection with, an injury occurring prior to the date of such amendment or termination. In addition, any such amendment or termination of the arbitration provisions of the Plan shall not be effective until at least 14 days after written notice has been provided to you. Any such amendment or termination will be adopted pursuant to formal written action of a representative authorized to act on behalf of AutoZone.

# DEFINITIONS

This section defines specific terms used in this booklet. These definitions should not be interpreted to extend coverage unless specifically provided for in the other sections of this booklet and the Plan document.

© Copyright 2005 PartnerSource, Inc.
Rev.4/1/06

**0083**

-AutoZoner should retain 1st copy
-Mail 2ⁿᵈ copy to SSC
-Send 3rd copy to the Regional HR Manager

## AZ TEXAS ADVANTAGE ACKNOWLEDGEMENT FORM

**RECEIPT OF MATERIALS.** By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the Summary Plan Description (the "SPD") for the AZTEX Advantage: AutoZone Texas Occupational Injury Benefit Plan, effective August 1, 2005.

**INJURY NOTICE AND MEDICAL PROVIDERS.** I understand and agree that if I am injured on the job, I must notify my Manager On Duty within 24 hours of the time of the injury and receive any medical care from a Plan-approved physician in order to receive benefits under the Plan.

**SAFETY PLEDGE.** I agree to familiarize myself with the safety program for the Company and to perform my job according to the general and departmental safety rules of the Company. I will also use any personal protective equipment that is provided to me. I also agree to immediately report to my manager on duty any accident that involves another AutoZoner, a customer, a vendor, or me. I will also immediately report any unsafe act, condition or equipment. I will also cooperate with any accident investigations, and actively participate in any Company safety training programs.

**ARBITRATION.** I also acknowledge that this SPD includes a mandatory company policy requiring that certain claims or disputes relating to an on-the-job injury (that cannot otherwise be resolved between the Company and me) must be submitted to an arbitrator, rather than a judge and jury in court. I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Company at any time on or after August 1, 2005, I am accepting and agreeing to comply with these arbitration requirements. I understand that the Company is also accepting and agreeing to comply with these arbitration requirements. All covered claims brought by my spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns are also subject to the Company's arbitration policy, and any decision of an arbitrator will be final and binding on such persons and the Company.

| | |
|---|---|
| X _(signature)_ | 7/28/05 |
| AutoZoner's Signature | Date |
| MARIO B. FLORES | |
| Print AutoZoner's Name | |
| | |
| Parent or Legal Guardian Signature (if AutoZoner under age 18) | Date |
| 3115 | |
| AutoZoner's Store Number | |
| X | |
| For the Company | Date |

© Copyright 2005 PartnerSource, Inc.
Rev. 8/2005



0140